## UNITED STATES *ex rel.* WEST *v.* HITCHCOCK.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 194.   Argued January 30, 1907.—Decided March 4, 1907.

While the promise of the United States to allot 160 acres to each member of the Wichita band of Indians under the act of March 2, 1895, 28 Stat. 876, 895, may confer a right on every actual member of the band, the primary decision as to who the members are must come from the Secretary of the Interior; and, in the absence of any indication in the act to allow an appeal to the courts for applicants who are dissatisfied, mandamus will not issue to require the Secretary to approve the selection of one claiming to be an adopted member of the tribe but whose application the Secretary has denied.

In view of long established practice of the Department of the Interior, and the undoubted power of Congress over the Indians, this court will hesitate to construe the language of §§ 441, 463, Rev. Stat., as not giving the Department of the Interior control over the adoption of whites into the Indian tribes.

Where the Secretary of the Interior has authority to pass on the right of one claiming to be a member of a band of Indians to select land under an agreement ratified by an act of Congress, his jurisdiction does not depend upon his decision being right.

26 App. D. C. 290, affirmed.

THE facts are stated in the opinion.

*Mr. William H. Robeson* and *Mr. Samuel A. Putman,* with whom *Mr. William C. Shelley* was on the brief, for plaintiff in error:

The duty of the Secretary to identify the individual as a member of the tribe does not involve judicial discretion. It is not material to determine whether this was a ministerial or a judicial duty, because the answer of the Secretary and all the evidence in the case shows that he did find that this relator is a member of the tribe and his only reason for refusing to approve relator's selection of land was because he did not approve of that membership.

Membership by adoption being conceded, the approval or disapproval by the Secretary of the selection is not a power but a duty; the duty to approve selections made within the requirements of the statute is positive, the duty of disapproving selections applies only to those made in violation of the requirements of the statute, and the performance of the one duty or the other is positively defined by the provisions of the act giving to the Secretary no option whatever whether he shall approve or disapprove a selection.

The allotment of land selected does not constitute a bounty from the Government, but is a partial payment of the consideration for the cession of the lands of the tribe, and the failure of the Secretary to approve this relator's selection is a forcible abatement by that much of the consideration agreed to be paid by the United States.

With the determination of these questions in favor of the proposed allottee, then, if there ever was any judicial discretion or power vested in the Secretary, it was exhausted, and nothing remained to him but the performance of the plain duty to approve the relator's selection. The Secretary cannot capriciously disapprove selections. *Marbury* v. *Madison*, 1 Cranch, 137.

But when these facts, which the Secretary now admits, are determined in relators' favor, and the Secretary's judicial functions thereby exhausted, the same obligation rests upon him to perform the ministerial duty following upon the exercise of his judgment, as was enforced by the judgment of the court in the case of *United States* v. *Schurz*, 102 U. S. 378, where, after once passing upon the right of the claimant to a patent, the Secretary was required to deliver it.

If in this case the courts have not power to enforce the plain mandates of this agreement and statute, it will present a condition which has often been said to involve a monstrous absurdity in organized government; that there should be no remedy, though a clear undeniable right is shown to exist. *Kendall* v. *United States*, 12 Pet. 62.

*Mr. Assistant Attorney General Campbell* and *Mr. Fred H. Barclay*, with whom *Mr. Jesse C. Adkins* was on the brief, for defendant in error:

·The allegations in defendant's answer to the petition, that he had, on July 3, 1901, reached and announced a conclusion and decision that relator was not, by nativity or adoption, a member of the Wichita and affiliated bands of Indians and therefore not entitled to an allotment, are sufficient to defeat the application for the writ.

The action of the defendant, as Secretary of the Interior, in refusing to approve the relator's application for an allotment of land, involved a determination by the Secretary of the question whether the relator was within the category of persons entitled to allotment. The Secretary having alleged in his answer that he had decided that relator was not within this category, the writ of mandamus will not issue.

It was for the Secretary to determine whether the relator was an adopted member; and of course it is elementary law that when in such a case the Secretary has determined that, or any question, so committed to him it is immaterial whether his determination is right or wrong; that is a matter which cannot be considered by the courts, and his decision cannot be reviewed by them. *De Cambra* v. *Rogers*, 189 U. S. 119; *Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316; *Wisconsin Central R. R. Co.* v. *Price Co.*, 133 U. S. 496, 511; *Runkle* v. *United States*, 122 U. S. 543, 557.

Mandamus should not issue in cases of doubtful right, but only when the legal right of the party to that which he demands has been clearly established. *Life and Fire Insurance Co.* v. *Wilson's Heirs*, 8 Pet. 291, 302; *Reeside* v. *Walker*, 11 How. 272, 289.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition for mandamus to require the Secretary of the Interior to approve the selection and taking of one

hundred and sixty acres by the relator out of the lands ceded to the United States by the Wichita and affiliated bands of Indians, under an agreement of June 4, 1891, ratified by the Act of Congress of March 2, 1895, c. 188. 28 Stat. 876, 895–897. The petition alleges that the relator is a white man married to a Wichita woman and thereby a member of the tribe, and that his adoption was confirmed and recognized in various ways set forth. By the second article of the agreement, as part of the consideration, the United States agreed that there should be allotted to each member of the said bands, native and adopted, one hundred and sixty acres out of the said lands, to be selected by the members, with qualifications not in question here. The fourth article contains provisions as to the title to allotments when they "shall have been selected and taken as aforesaid, and approved by the Secretary of the Interior." After a demurrer to the petition, which was overruled, 19 App. D. C. 333, the Secretary answered, alleging that he had examined and considered the application of the relator and on July 3, 1901, had reached and announced a decision that the relator was not a member of the tribe, and thereupon had denied the application. The relator moved for a peremptory mandamus, which was denied, and filed a demurrer, which was overruled, and thereupon pleaded that the Secretary did not, by the decision alleged, decide that the relator was not a member of the tribe, and for that reason deny him the allotment. Issue was joined and evidence taken, and after a hearing judgment was entered for the respondent and the petition dismissed. The judgment was affirmed on appeal, 26 App. D. C. 290, and then the case was brought to this court. The issues here are those raised by the plea, the demurrer to the answer and the motion for a peremptory writ.

It is argued that the answer admits the averments of the petition, as it does not deny them in terms, and that therefore it must be taken that there was no question concerning the relator's membership for the Secretary to decide. His

identity was not disputed, nor, it is said, the acts of adoption that took place long before the relator applied to have his selection approved, and, therefore, the Secretary's duty was merely ministerial, to carry out the mandate of the act. But the admission, at most, is only the admission implied by a plea of estoppel by judgment. In truth it hardly goes so far as that; for when a party says that he is the proper person to decide the question raised and that he has decided it against the party raising it, he hardly can be said to admit that his decision was wrong.

The approval of the Secretary required by the agreement must include as one of its elements the recognition of the applicant's right. If a mere outsider were to make a claim, it would have to be rejected by some one, and the Secretary is the natural if not the only person to do it. No list or authentic determination of the parties entitled is referred to by the agreement, so as to narrow the Secretary's duty to identification or questions of descent in case of subsequent death. The right is conferred upon the members of the bands, but the ascertainment of membership is left wholly at large. No criteria of adoption are stated. The Secretary must have authority to decide on membership in a doubtful case, and if he has it in any case he has it in all. Furthermore, as his decision is not a matter of any particular form, his answer saying that he has decided the case is enough; for even if he had not decided it before, such an answer would announce a decision sufficiently by itself.

But the answer was not confined to a general allegation that the Secretary had decided the case. It gave the date of the decision, and the relator, under his plea, put the decision in evidence. It was a letter which seemed to admit that the relator had been adopted by the Indians as a member of their tribe, but assumed that the adoption must have been approved by the Indian Office to be valid, as provided by a regulation of that Department. The relator contends that the validity of the adoption was a matter purely of

Indian law or custom, and that the Department could not take it under control. Probably it would have been unfortunate for the Indians if such control had not been exercised, as the temptation to white men to go through an Indian marriage for the purpose of getting Indian rights is sufficiently plain. We are disposed to think that authority was conferred by the general words of the statutes. Rev. Stats. §§ 441, 463. By the latter section: "The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs, and of all matters arising out of the Indian relations." We should hesitate a good deal, especially in view of the long-established practice of the Department, before saying that this language was not broad enough to warrant a regulation obviously made for the welfare of the rather helpless people concerned. The power of Congress is not doubted. The Indians have been treated as wards of the Nation. Some such supervision was necessary, and has been exercised. In the absence of special provisions naturally it would be exercised by the Indian Department.

However, it hardly is necessary to pass upon that point. Although the answer gave the decision a date, that did not open it for consideration. If the Secretary had authority to pass on the relator's right to select land, his jurisdiction did not depend upon his decision being right. By alleging that he had denied the application he did not invoke the revision of his reasons by a court, even when he saw fit to add the date. He raised no question of law, but simply stood on his authority and put forward his decision as final. As we have implied, such an answer affirms not merely the past but the present determination of the answering tribunal, and must be assumed to be based on reasons that the respondent deems adequate. Even if those given in the letter of July 3, 1901, had been bad, they could not be taken to exhaust the Secretary's grounds. He has not disclosed to

the court any statement of those grounds purporting to be exhaustive and complete, and the court cannot make an inquisition into his mental processes to see whether they were correct. See *DeCambra* v. *Rogers*, 189 U. S. 119, 122.

.We doubt if Congress meant to open an appeal to the courts in all cases where an applicant is dissatisfied. Of course the promise of the United States that there shall be allotted one hundred and sixty acres to each member of the Wichita band may be said to confer an absolute right upon every actual member of the band. But some one must decide who the members are. We already have expressed the opinion that the primary decision must come from the Secretary. There is no indication of an intent to let applicants go farther. There are insuperable difficulties in the way of at least this form of suit, and the Department of the Interior generally has been the custodian of Indian rights.

*Judgment affirmed.*