# UNITED STATES EX REL. PARISH *v.* CORTELYOU.

EXECUTORS AND ADMINISTRATORS; STATUTES; EXECUTIVE OFFICERS; MANDAMUS.

1. Where an act of Congress creates or recognizes the right of a party to the payment of money by the United States, without negativing its succession in case of his death, and makes an appropriation therefor, the right to enforce the demand, if it is enforceable at all, against an executive officer of the government by mandamus, survives and passes to the personal representatives of such party. (Construing act of Congress of February 17, 1903, 32 Stat. at L. 1612, chap. 559.)

2. Where an act of Congress refers a claim to the Secretary of the Treasury for adjustment and payment, it is his duty alone to adjust it; and if he refers the matter to one of his subordinates he is not bound by his report, but may disapprove it.    (Construing act of Congress of February 17, 1903, 32 Stat. at L. 1612, chap. 559.)

3. The act of Congress of February 17, 1903, 32 Stat. at L. 1612, chap. 559, referring the claim mentioned therein to the Secretary of the Treasury, and requiring him in adjusting it to apply a rule as to the measure of damages laid down by the Supreme Court of the United States in a case named, in accordance with evidence previously collected by the court of claims, and then, after charging the claimant with payments on account, to find what balance, if any, is due him under such rule and evidence, and to pay him such balance,—imposed upon the Secretary a duty involving the exercise of discretion, and not a mere ministerial duty; and whether, in finding that the claimant was entitled to nothing under the act, he erred, is not reviewable in mandamus proceedings by the claimant. (Following *United States ex rel. West* v. *Hitchcock,* 26 App. D. C. 290, 205 U. S. 80, 51 L. ed. 718, 27 Sup. Ct. Rep. 423.)

No. 1771.   Submitted May 7, 1907.   Decided June 4, 1907.

HEARING  on an appeal by the relator in a mandamus proceeding from a decree of the Supreme Court of the District of Columbia discharging a rule to show cause and dismissing the petition for the writ.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a petition for a writ of mandamus to compel Leslie M. Shaw, as Secretary of the Treasury, to issue a draft in favor of the petitioner for the sum of $181,358.95 in payment of a claim referred to him by act of Congress approved February 17, 1903.   The petition was filed May 2, 1906, and return made thereto by Leslie M. Shaw.   After appeal perfected, Leslie M. Shaw resigned the office of Secretary of the Treasury, and George Bruce Cortelyou, as his successor in office, has been made a party in his stead.

Petitioner, Emily E. Parish, is the duly qualified executrix of the will of Joseph W. Parish, who died April 7, 1905.

The material facts concerning which there is no substantial disagreement are these: On March 5, 1863, J. W. Parish & Company (to whose right Joseph W. Parish succeeded) contracted with the United States to deliver to them all ice required to be used by their Medical Department during the remainder of that year. Deliveries were required to be made as required at Nashville for $25 per ton; at Cairo and Memphis for $20 per ton; and at St. Louis for $15 per ton. On March 25, 1863, the Department wrote the contractors that the ice contracted for must be delivered without delay as follows: At St. Louis 5,000 tons; at Cairo 5,000 tons; at Memphis 10,000 tons; and at Nashville 10,000 tons. March 31, 1863, an instruction was sent the contractors, and received by them April 2, 1863, suspending the order until further instructions. At that date 12,768 tons had been delivered and paid for at the contract price. The order of suspension was never recalled. Under the authority of an act of Congress approved May 31, 1872, Parish brought suit against the United States, in the court of claims, to enforce his demand under said contract. The court of claims dismissed the suit. 12 Ct. Cl. 620. On appeal that judgment was reversed by the Supreme Court of the United States, and the case remanded, with direction to ascertain the damages sustained by the claimant. 100 U. S. 500, 25 L. ed. 763. The court of claims then rendered a judgment for the claimant for the sum of $10,444.91. 16 Ct. Cl. 642. Claimant then petitioned Congress to satisfy as much of his claim as had not been allowed by the court of claims. Responding to a reference by a committee of the House of Representatives, the War Department, through the Surgeon General, reported that the whole of the undelivered ice, through the order of suspension, amounted to 17,232 tons, and that the same had been lost by the contractor. The report also stated that under the evidence before the court of claims, and additional evidence before the Department, Parish was entitled to be reimbursed, in addition to the judgment of the court of claims, in the sum of $58,341.95, for the loss he had sustained because of the nondelivery of the 17,232 tons of ice.

After this report, on February 20, 1886, Congress passed an act directing the payment of said sum of $58,341.55 to Parish, in addition to said sum of $10,444.91, "being the balance of money laid out and expended by him in the purchase of 17,232 tons of ice, for the use and at the request of the government of the United States, which were not afterwards called for, but were wholly lost to said Parish." 24 Stat. at L. 653, chap. 11. Parish again applied to Congress for relief, and on February 17, 1903, the following act was passed:

"An Act to Refer the Claim of Joseph W. Parish to the Secretary of the Treasury for Examination and Payment of Any Balance Found Due.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury is hereby authorized and directed to make full and complete examination into the claim of Joseph W. Parish against the United States for balance alleged to be due him by virtue of a contract made by J. W. Parish & Company with Henry Johnson, a medical storekeeper, acting on behalf of the United States, which contract bears date March 5, 1863, and provides that said J. W. Parish & Company should furnish to the United States for the use of the Medical Department of the Army the whole amount of ice required to be consumed at Memphis and Nashville, Tennessee, St. Louis, Missouri, and Cairo, Illinois, during the remainder of the said year 1863; that the Secretary shall determine and ascertain the full amount which should have been paid said J. W. Parish & Company if the said contract had been carried out in full, without change or default made by either of the parties thereto, under the rule of the measure of damages laid down by the Supreme Court of the United States in the case of the *United States* against *Behan* (One hundred and tenth United States Reports, three hundred and thirty-eight), and in accordance with the evidence in the case collected by the United States court of claims, and, after determining the full amount thus due said J. W. Parish & Company, under the said contract and rule of law aforesaid, to deduct therefrom all pay-

ments which have been made to said J. W. Parish & Company, or to said Joseph W. Parish, whether in pursuance of judgments of the court, or direct appropriation by Congress, or otherwise, stating what balance, if any, is due under the rule and evidence prescribed herein, and pay the said balance to said Joseph W. Parish, the present owner of said claim; and sufficient money to pay such balance is hereby appropriated out of any money in the Treasury which has not been otherwise appropriated.

"Approved, February 17, 1903 [32 Stat. at L. 1612, chap. 559]."

The bill resulting in the act aforesaid was accompanied by an elaborate committee report, which is made an exhibit to the petition. This report gives a history of the Parish claim and the litigation concerning it. The findings of fact by the court of claims are set out and commented on; and it is said that the decision reported in 100 U. S. 500, 25 L. ed. 763, is erroneous, because the court overlooked the ninth finding of the court of claims, regarding Parish's readiness to deliver the remainder of the 30,000 tons of ice. The report, as a whole, is an argument in favor of Parish's right to further and complete compensation, and is relied on by the appellant as showing the plain meaning of the act aforesaid, thereafter adopted. In the conclusion of the report, and referring *to a former report*, it is said:

"In that report the committee state that the bill directs the Secretary of the Treasury to make an examination into the claim of said Parish for balance alleged to be due him under a contract with the United States, under the rule of damages prescribed by the Supreme Court of the United States in the case of the *United States* v. *Behan.*

"The pending bill fixes the rule which was followed by the Supreme Court in a case quite similar as to facts. It is the opinion of your committee that the Secretary of the Treasury is the proper person to investigate this case, as provided for in the bill. The Department is in possession of all necessary data to make full investigation, as it has its own records and

the full record of proceedings before the court of claims. This is a safe and orderly way to dispose of the matter at present.

"If the United States owes the claimant, this fact will be disclosed, and he will be paid. If it does not owe him, that will also be brought to light, and in either event a final determination be reached."

"Congress having heretofore given only partial justice in this case, there is no question but it is authorized to do complete justice to the claimant, as this bill and the law contemplates."

The petition alleges that the matter was referred to the auditor of the War Department after the passage of the act aforesaid, who stated an account showing the entire contract price, and after deducting the various payments made to Parish, and the sum of $137,385.12 as "amount saved on now delivered ice," showed a balance due Parish of $181,358.95, of which he was notified. And a report of the "law board" of the Department is alleged, showing the approval of this account as being in accord with the intention of Congress as expressed in the committee report and the act aforesaid. The petition alleges that this report of balance was authoritative, and all that remained for the respondent "was a purely ministerial act in obedience to and in execution of the clearly expressed will of the lawmaking power, so that the said act of February 17, 1903, from and after the report or statement of account of said auditor for the War Department, became and was mandatory upon the defendant." The prayer is for a writ of mandamus requiring the respondent, as Secretary of the Treasury, to issue a draft to the petitioner for the said sum of $181,358.95, as found by the auditor. Some extracts from the evidence before the court of claims, and the Surgeon General thereafter, are given in the petition, but there is no transcript of the entire evidence in either the petition or the return thereto.

The return of the respondent admits the general facts before recited, but denies the conclusions therefrom. The material allegations of the return are the following:

"15. Answering the fifteenth paragraph, the defendant says

that the said Parish was not able to deliver said ice as in said paragraph alleged, and that the defendant, after a full consideration of all the evidence in the court of claims on this question, has decided that the said Parish was not able to deliver the said ice as in this paragraph alleged."

"16. Defendant denies that the evidence collected in the court of claims showed the profits which would be due under the contract, or showed the cost of transporting the ice which was not delivered under said contract."

"17. Defendant denies that the evidence in the court of claims shows that the transportation of ice at Lake Pepin and elsewhere was practicable. Defendant further says that, after a thorough consideration of all the evidence in the court of claims on this question, he decided that said transportation of ice from Lake Pepin was impracticable.

"18. Defendant says, as will be hereafter more fully set forth, that defendant has determined and stated the full amount due said Parish in accordance with the evidence collected in the case in the court of claims, and under the rule for the measure of damages in the case of *United States* v. *Behan.* Defendant further admits that, as will be hereafter more fully set forth, defendant referred the case to the auditor for the War Department for the latter's examination and advice thereon, and that the said auditor examined and stated the said account in the terms set forth in said paragraph. Defendant further says that on the 26th day of January, 1904, the said auditor revised his said statement, and found that nothing was due the said Parish on said claim.

"19. Defendant admits the quotations in said paragraph are taken from a report made to said auditor for the War Department by a clerk in his office under the title of "Law Board," which report was made by said clerk solely for the advice and assistance of said auditor in making his report to defendant."

"22. Defendant denies that every prerequisite for the payment of any money to Parish has been complied with.

"Defendant further says that on the 31st day of May, 1904, he decided that under the said act of Congress of February 17,

1903, there was no balance due to the said Parish, and therefore declined to pay any money to said Parish.

"23. Further answering said rule to show cause and said petition, this defendant says:

"That after the passage of the said act of Congress of February 17, 1903, and at the request of said Parish, defendant, as Secretary of the Treasury, took up for consideration the said claim of said Parish; that thereupon defendant requested his subordinate, the auditor for the War Department, to examine and settle the said account, and to report to defendant his opinion and advice thereon; that the said auditor examined the said account, and on the 11th day of August, 1903, stated the same as set forth in paragraph 18 of the petition, and on the same day transmitted his certificate of statement to defendant for his action; that on the 12th day of August, 1903, defendant referred said account to his subordinate, the Comptroller of the Treasury, for re-examination, and for his opinion and advice thereon; and that said Comptroller re-examined the said claim, and on the 21st day of January, 1904, advised defendant that in his opinion there was nothing due to said Parish under said act of February 17, 1903, and revised the said account; and that on the 26th day of January, 1904, pursuant to said revision of said Comptroller, said Auditor canceled the certificate theretofore made by him, and certified that there was nothing due said Parish on account of said claim; that defendant also referred the matter to the Solicitor of the Treasury, and requested the latter's opinion and advice thereon; and on the 12th day of January, 1904, said Solicitor of the Treasury advised defendant that in his opinion there was nothing due to said Parish under said act of Congress on account of said claim. That thereafter, and pursuant to the authority and direction of said act of February 17, 1903, defendant, acting in his official capacity as Secretary of the Treasury, made a full and complete examination into the claim of Joseph W. Parish against the United States for balance alleged to be due him under the contract described in said act of Congress, and into the evidence in the case collected in the United States

court of claims, and, after and upon such full and complete examination, and upon full and deliberate consideration thereof, and of the said opinions and advice so theretofore at his request given to him by his said subordinates and the said Solicitor of the Treasury as hereinbefore set forth, and in the exercise of the judgment and discretion conferred upon him by said act of Congress, did, on the 31st day of May, 1904, determine and ascertain the full amount which should have been paid said Parish if the said contract had been carried out in full, without change or default made by either of the parties thereto, under the rule of the measure of damages laid down by the Supreme Court in the said case of *United States* against *Behan,* and in accordance with the evidence in the case collected by the court of claims, and did deduct therefrom all payments which have been made to said Parish, and did determine and ascertain and state that, under the said rule and evidence, no balance is due to said Parish on account of said claim; a copy of said determination of this defendant is hereto attached marked 'Exhibit A,' and made a part hereof."

As an exhibit to the return is attached the decision of the respondent made May 31, 1904, denying the claim. This decision is embraced in five printed pages of the record, and contains a review of the entire case, and the reasons of the respondent for his conclusion.

The petitioner demurred to the return. On February 13, 1907, the order of the court recites: "This cause came on to be heard upon the petition, the rule to show cause issued thereon, the answer of respondent, exhibits, and affidavits, and the demurrer to said answer," and thereupon the denial of the prayer, the discharge of the rule to show cause, and the dismissal of the petition with costs. From this order the petitioner has appealed.

*Mr. Holmes Conrad* and *Mr. Leigh Robinson* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. A preliminary question involving the right of the petitioner, as executrix of the will of Joseph W. Parish, to maintain the action under the act of February 17, 1903, is raised by the first paragraph of the return, in the nature of a demurrer, and must be first considered. The contention is that the statute was passed solely for the relief of Joseph W. Parish, and makes no provision for the succession of his personal representatives. This is true, but the act creates or recognizes the right of said Parish to the payment of money, and makes an appropriation therefor. Assuming, for present purposes, that the plain, simple duty was imposed upon the Secretary of the Treasury to make that payment, a right of action accrued to Parish for the enforcement of that duty. For manifest reasons the action of debt or assumpsit would not lie, and the only proceeding left to the party was in mandamus to compel payment. It is the appropriate action at law to recover the money, and is subject to the principles governing such actions. *Louis* v. *Brown Twp.* 109 U. S. 162, 166, 27 L. ed. 892, 893, 3 Sup. Ct. Rep. 92. As there is no apparent reason why the right should be limited to Joseph W. Parish solely, and there is nothing in the act expressly negativing its succession in case of his death, we are of the opinion that the right to enforce the demand, if it can be enforced at all, survived, and passed to his personal representatives.

2. The contention of the petitioner that the statement of the claim made by the auditor of the War Department, an officer subject to the direction of the Secretary of the Treasury, and the ascertainment of the balance due Parish by him, were binding upon the Secretary, and left nothing for him to do but issue the draft for the amount as found, is untenable. The duty of adjusting the claim, of whatsoever nature that duty may be, as well as of making the payment of the amount awarded, was imposed by the statute, in express terms, upon the Secretary of the Treasury, and upon no one else. The act is quite

different from that under consideration in *Kendall* v. *United States,* 12 Pet. 524, 610, 9 L. ed. 1181, 1215. By that statute, the duty of adjusting the account and ascertaining the credit due the claimant was devolved expressly upon the Solicitor of the Treasury. When adjusted by him, the single duty of carrying the ascertained sum to the credit of the party was imposed upon the Postmaster General. He was vested with no discretion or control over the decision of the Solicitor, and with no right of review thereof. While the Secretary of the Treasury might, probably, have delegated the duty of stating the claim of Parish, in the first instance, to the auditor or any other skilled employee of his department, and might have approved and adopted the report and made it his own decision under the act, he was not bound to do so. Moreover, his return shows that he did not adopt the report of the auditor, and that that officer revised his views, and made another statement to the effect that nothing was due the claimant. The return further shows that the Secretary, in person, took the entire matter under consideration, as required by the act, and made a decision to the effect that nothing was due.

3. The substantial question in this case is the effect to be given to the act of February 17, 1903. If it imposes a plain ministerial duty upon the Secretary of the Treasury, then the performance of the duty may be compelled. As has been said by the Supreme Court of the United States: "If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer." *Roberts* v. *United States,* 176 U. S. 221, 231, 44 L. ed. 443, 447, 20 Sup. Ct. Rep. 376.

On the other hand, if it does not impose upon him the plain duty of ascertaining a balance due Parish by a mere computation, on plain lines laid down for his guidance, but requires him to ascertain facts and make an application thereto of a prescribed measure of damages; in other words, if it requires the exercise of any discretion on his part in reaching a con-

clusion, then it is beyond the power of the courts to control the exercise of that discretion. *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 324, 47 L. ed. 1074, 1078, 23 Sup. Ct. Rep. 698. And in such a case, the question is not whether he has made a correct decision, but whether he has decided at all. It is not for the courts to determine whether he has decided wrongly. *United States ex rel. West* v. *Hitchcock,* 26 App. D. C. 290, 295, 205 U. S. 80, 51 L. ed. 718, 27 Sup. Ct. Rep. 423. Tested by these principles, we think there was no error in denying the petition. If it be true, as contended for their report, that the committees of Congress regarded the claim as an entirely just one for the entire amount of the contract price, and considered that all that was necessary to ascertain the exact amount was a simple calculation, of which any ordinary person is capable, that intention could have been readily and plainly expressed. As an expression of such an intention, the language of the act was, to say the least, unfortunately chosen. That it is ambiguous is well demonstrated by the radically different views of its meaning taken by the claimant, and by the Secretary, whose perfect good faith must be presumed. The act, after reciting the substance of the contract, provides "that the Secretary shall determine and ascertain the full amount which should have been paid to J. W. Parish & Company if the said contract had been carried out in full, without change or default made by either of the parties thereto." Had it stopped there, the meaning contended for would be plain enough. But as the contract had not been "carried out in full without change or default made by either of the parties thereto," it was deemed necessary to determine the claimant's damages by reason of the fact that the contract had not been carried out through the change and default of the representatives of the United States charged with its execution. Consequently, the act proceeded to recite in the same sentence, with the interposition of a comma: "Under the rule of the measure of damages laid down by the Supreme Court of the United States in the case of *United States* v. *Behan* (one hundred and tenth United States Reports, three hundred and thirty-eight), and

*in accordance with the evidence in the case collected by the United States court of claims,* and after *determining the full amount thus due* said J. W. Parish & Company, *under the said contract and rule of law aforesaid,* to deduct therefrom all payments which have been made to said J. W. Parish & Company, or to said Joseph W. Parish, whether in pursuance of judgments of the court, or direct appropriation by Congress, or otherwise, *stating what balance, if any, is due under the rule and evidence prescribed herein,* and pay the said balance to said Joseph W. Parish, the present owner of said claim" [32 Stat. at L. 1612, chap. 559],—sufficient money being also appropriated for the purpose. The rule for the measure of damages is thus declared in the case designated (*United States* v. *Behan,* 110 U. S. 344, 28 L. ed. 170, 4 Sup. Ct. Rep. 81): "The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage; namely, first, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of *Masterton v. Brooklyn,* 7 Hill, 69, 42 Am. Dec. 38, they are 'the direct and immediate fruits of the contract,' they are free from this objection; they are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation.' Still, in order to furnish a ground of recovery in damages they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense."

Having prescribed this as the applicable rule, the next direction was to apply it, not to the facts recited in the report or to the findings of fact by the court of claims, but "to the evidence in the case collected by the United States court of claims." What this evidence was as a whole we are not advised. The Secretary says of it in his decision: "The evidence taken before the court of claims fails to cover some very important questions, and is vague and unsatisfactory upon other matters." His general conclusion from the whole of it is that it does not show that Parish was ready to deliver and could have made delivery of the whole of the ice if the suspension of the contract had been recalled; and that the payments heretofore made to him exceed the loss which he actually sustained. He was commanded to consider the evidence, to apply the rule of law to it, and to render a decision. This involved the exercise of some discretion; and whether or not he erred in his decision is a matter which the courts have no right to determine. They are vested with no power of review.

It follows that the judgment must be affirmed, with costs; and it is so ordered.                                    *Affirmed.*

On motion of the appellant, made June 10, 1907, a writ of error to the Supreme Court of the United States was allowed the same day.