## MITCHELL et al. v. UNITED STATES.*

Circuit Court of Appeals, Ninth Circuit.
November 21, 1927.

No. 5060.

Indians ⬤►13(3)—Adoption into tribe must be approved by Secretary of the Interior before Indian is entitled to allotment (Act Feb. 8, 1887, as amended [25 USCA § 331 et seq.]).

Regulation of the Secretary of the Interior, requiring adoption into a tribe to be approved by the Indian Commissioner and Secretary before becoming effective, *held* valid, and such approval held essential before the adopted member is entitled to an allotment of land under Act Feb. 8, 1887, as amended by Act Feb. 28, 1891, and Act June 25, 1910 (Comp. St. § 4195 et seq.; 25 USCA § 331 et seq.).

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by John Mitchell and Nellie Perkins against the United States. Decree for the United States, and complainants appeal. Affirmed.

Appellants, John Mitchell and Nellie Perkins, his niece, of part Indian blood, members of the Squaxin tribe of Indians, by this suit in equity brought under Act of Congress of August 15, 1894, amended by Act of February 6, 1901 (Comp. St. Ann. § 4214 [25 USCA § 345]), seek to establish rights to allotments of 80 acres for each upon the Quinaielt reservation in western Washington. The government denied that plaintiffs were entitled to allotments. Testimony was heard and from a decree in favor of the government, appeal was taken.

The facts are as follows: By executive order setting apart a reservation made in accordance with the provisions of the treaty (12 Stat. 971) with the Quinaielt and Quilehute Indians July 1, 1855, and January 25, 1856, providing for Indians in that locality, a certain tract (not necessary to be here described) was withdrawn from sale and set apart for the use of the Quinaielt, Quilehute, Hoh, and other tribes of "fish-eating Indians on the Pacific Coast." By Act of March 4, 1911 (36 Stat. L. 1345), the Secretary of the Interior was authorized to make allotments on the Quinaielt reservation under the provisions of the allotment laws of the United States to all members of the Hoh, Quilehute, Ozette, "or other tribes of Indians in Washington, who are affiliated with the Quinaielt and Quilehute Tribes in the treaty of July 1, 1855, and January 23, 1856, and who may elect to take allotments on the Quinaielt res-

*Rehearing denied January 9, 1928.

ervation, rather than on the reservations set aside for these tribes: Provided, that the allotments authorized herein shall be made from the surplus lands on the Quinaielt reservation after the allotments to the Indians thereon have been completed." Plaintiffs never claimed allotments before the act just cited (1911) became a law.

The Squaxins are a fish-eating tribe of Indians; Mitchell's mother and grandfather were Squaxins. His grandmother was a Yakima Indian. His mother was adopted by the Yakimas in 1910, and then became an allottee on the Yakima reservation. At that time Mitchell was married and had a family. He lived on the Puyallup reservation for 24 years before 1911, but had never received an allotment. In 1911 for a few months he was employed on the Quinaielt reservation as a guard. He then returned to the Puyallup reservation, but in 1912 again went to the Quinaielt reservation where he lived. In April, 1912, plaintiffs were adopted by a Quinaielt council, but the Secretary of the Interior never expressly approved of the adoptions, nor on the other hand, were plaintiffs ever informed that the Secretary had refused to confirm the adoptions. After the tribal adoptions, the plaintiff's names were certified by the head man of the tribe and by the Indian agent to the Department, but the certificate together with a letter was afterward returned to the allotting agent. Plaintiffs appeared on a list of tentative allotment selections prepared under a special allotting agent.

On the trial a witness who was the superintendent of Indian affairs for southwestern Washington at the time of the adoptions by the tribal council, testified that the regulations of the Interior Department required that all adoptions must be approved by the Commissioner of Indian Affairs and the Secretary of the Interior before they became effective, and that he did not know whether the adoptions of these plaintiffs had been approved before 1913 when he left. The Indian agent who was in charge at the time of the trial testified that he had been in office since 1913, and that there was no record that the adoptions of the plaintiffs had ever been approved. Mitchell testified that in 1912, about six months after the adoption proceedings, the government allotting agent told him to make a selection; that he did so and turned the selection into the office of the allotting agent, who told him there was no doubt about his obtaining an allotment; and that his purpose in going before the tribal meeting of the Quinaielt Indians was

to be adopted and get land. The agent appointed to allot the lands in 1912 testified that allotments had been stopped before that time, because the lands were more valuable for timber than for agricultural purposes; that he went to Washington, where he conferred with the Secretary of the Interior, and after the conference he was told to go back to the reservation and make allotments pursuant to the instructions of a letter from the Department of the Interior. That letter is not in the record in the case.

No further allotments were made until 1924. In 1917 Mitchell left the reservation, but afterward renewed his efforts to obtain an allotment, and in September, 1924, was advised by letter of the Department of the Interior that plaintiffs had been denied allotments by the Secretary of the Interior, because they were not eligible to enrollment in the Quinaielt reservation; that their names had been taken up by the council meeting of 1918 when a special agent, in reporting the proceedings, had found that Mitchell's mother and sisters had not affiliated with the Quinaielt Indians, and that, although the council of 1912 had adopted the plaintiffs, the council of 1918 did not take a special vote in the case, and that as the head of the family was an allotted member of the Yakima Tribe, who had many years previously taken upon herself the habits and customs of a white citizen, and inasmuch as she and her descendants had never maintained tribal relations with the Quinaielt Indians, the applications were denied.

Stuart H. Elliott and H. G. & Dix H. Rowland, all of Tacoma, Wash., for appellants.

Thos. P. Revelle, U. S. Atty., and Arthur E. Simon and David Spalding, Asst. U. S. Attys., all of Seattle, Wash.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). It is recognized that a person may be adopted as a member of an Indian tribe according to the customs of the Indians, and that such adoption, if approved by the Interior Department, vests in the person adopted a right to an allotment of land that may be subject to be allotted to the Indians of the tribe. But to make the adoption into the tribe effective, so as to entitle the one adopted to obtain an allotment, there must be something more than the vote of the tribe or of its council of head men in favor of adoption.

The statute under which allotments are generally made provides that allotments to Indians may be made by the superintendent or agent under such rules and regulations as the Secretary of the Interior may from time to time prescribe. Act Feb. 8, 1887, as amended 1891 June 25, 1910, Comp. St. § 4195 et seq. (25 USCA § 331 et seq.). Pursuant to the authority so given, the Secretary made a regulation that adoptions must be approved by the Indian Commissioner and the Secretary before becoming effective. Such regulation is entirely consistent with the statute and the general policy of the United States to exercise a supervision by which the interests of the government, as well as of the Indians will be protected against possible fraud. Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259.

In United States ex rel. West v. Hitchcock, 205 U. S. 80, 27 S. Ct. 423, 51 L. Ed. 718, it was contended that the validity of the adoption of an Indian by a tribe was a matter purely of Indian law or custom, and that the Department of the Interior could not take it under control, but the court said that under the statutes (sections 441, 463, R. S. U. S. [5 USCA § 485 and 25 USCA § 2]), the Indians having been treated as wards of the nation, supervision by way of regulation of the Interior Department requiring approval of an adoption was a necessity.

Plaintiffs rely largely upon La Clair v. United States (C. C.) 184 F. 128. In that case patents issued, the adopted Indians had been allowed to go upon and improve the lands, and the record and patents disclosed that recommendation for allotments was approved by the Secretary of the Interior. It is readily conceded that no particular form of approval of adoption is necessary, and that circumstances and acts may be evidence of implied approval. But in the present matter the only conclusion that we can draw from the record is that the tribal adoption of plaintiffs was never directly or inferentially approved by the Secretary of the Interior. We must therefore affirm the decree.

Affirmed.