Donald M. ARMSTRONG, Appellant,

v.

UNITED STATES of America,
Appellee.

Buster McCURDY, Appellant,

v.

UNITED STATES of America,
Appellee.

Robin BULLCREEK, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 6917–6919.

United States Court of Appeals
Tenth Circuit.

July 28, 1962.

Everett Dahl, of Dahl & Sagers,
Midvale, Utah, for appellants.

Gerald R. Miller, Asst. U. S. Atty., Salt Lake City, Utah (William T. Thurman, U. S. Atty., Salt Lake City, Utah, with him on the brief), for appellee.

Before PHILLIPS, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

In an indictment it was charged that the defendants Armstrong, McCurdy and Bullcreek "did forcibly resist, oppose, impede, intimidate, and interfere with Randolph Aros and John Smithers, officers and employees of the Indian Field Service of the United States, both of whom being persons designated in Section 1114, Title 18, United States Code, while engaged in and on account of the performance of their official duties * * in violation of Section 111, Title 18, United States Code." Upon conviction the defendants McCurdy and Bullcreek were placed on probation for a period of three years, and the defendant Armstrong was sentenced to imprisonment for a maximum term of three years under the provisions of 18 U.S.C. § 4208(b).[1] The defendants appeal.

There is no dispute as to the facts, and the substance of the defendants' contentions here is that the evidence was insufficient to show that Aros and Smithers were engaged in the performance of their official duties when accosted by the defendants, that as a matter of law Aros and Smithers had no right to be upon the Indian reservation, and that the trial court, in effect, instructed the jury to return a verdict of "guilty."

It appears from the record that the inhabitants of the Goshute Indian Reservation in Utah and Idaho were involved in a dispute with the Indian Field Service over the right to use water arising on the reservation. In a pending civil action the United States had obtained an injunction which restrained certain individuals, including these defendants, from interfering with construction work being performed on an irrigation ditch by employees of the Indian Field Service. Aros and Smithers were among the employees who were performing services in connection with the ditch work, and they had been witnesses for the United States at a hearing in the injunction proceedings. Smithers, a soil scientist, had been dispatched by his superiors to the Goshute Reservation to supervise the construction job and to make soil and water surveys in connection therewith. Aros, a criminal investigator for the Indian Field Service, was assigned by his superior to the Goshute Reservation to protect other employees working on the job.

On September 10, 1961, Smithers, accompanied by Aros, left the site of the construction work in a departmental jeep, and traveled some distance on the reservation to make a reconnaissance study of water and soil conditions.[2]

---

1. The government's brief states that Armstrong was later returned to court; his previous sentence was suspended; and he was placed on probation for a term of three years.

2. As to the purpose of the trip, Smithers testified:

"Q. Will you tell us just what you did on September 10 on the Goshute Indian Reservation? A. Well, in the morning we experienced some minor mechanical difficulties with one of the tractors that was working on the ditch. And after we got that completed and—got it repaired after lunch—and about 1:20 I went—Mr. Aros said when I worked up on the upper end of the reservation that he would like to accompany me, he felt that he should accompany me, and I felt that he should, also, due to some past troubles that they had had. And so I asked Mr. Aros if he would care to go up with me at that time, as I was going to make some soil surveys, studies, up through there, and also run out some water sources on the creek. * * *

"Q. Now, did you make any soil samples on this trip? A. No. It was a reconnaissance study of these creeks here. When you take water samples you have to get a representative area. Now, where you have a stream running for quite a ways, you want to take a sample first at the source of the water. And you come down approximately a mile or so and take another one. And then where we have a confluence of creeks here, we take one above where these two creeks come together, and we take

522

Their vehicle was observed by the defendants who tracked it to an isolated point where they found the jeep parked. Within a short time Smithers and Aros returned, and saw Armstrong taking from the government vehicle a gun belonging to Aros. Aros protested, and Armstrong threw the gun into some bushes. A heated argument followed during which Smithers and Aros were informed that the jeep was being confiscated by the defendants, and that if they attempted to obtain the vehicle violence would occur. Armstrong stated, "We will make all effort to stop you, at the loss of blood, even at the loss of our lives. We will not let that jeep out of here." Smithers was unable to continue his work, and possession of the jeep was not obtained until two days later when the defendants were arrested. In describing this occurrence, the testimony of the defendants Bullcreek and McCurdy was not substantially different from that of Smithers and Aros.

■■ The United States, by virtue of its status as guardian, is responsible for the protection of the Indians on a reservation so long as they are wards of the government. United States v. Sandoval, 231 U.S. 28, 46, 34 S.Ct. 1, 58 L.Ed. 107; Choctaw Nation v. United States, 119 U.S. 1, 27, 7 S.Ct. 75, 30 L.Ed. 306; United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228. Congress has provided:

"The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations." Rev.Stat. § 463 (1875), 25 U.S.C.A. § 2.

This statute furnishes broad authority for the supervision and management of Indian affairs and property commensurate with the obligation of the United States. United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Ahtanum Irrigation Dist., 9 Cir., 236 F.2d 321, cert. denied 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367; United States v. Anglin & Stevenson, 10 Cir., 145 F.2d 622, 628, cert. denied 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405; Rainbow v. Young, 8 Cir., 161 F. 835. See United States ex rel. West v. Hitchcock, 205 U.S. 80, 84, 27 S.Ct. 423, 51 L.Ed. 718. The management of water and water projects on a reservation is clearly within the scope of the general statutory authority granted to the Commissioner of Indian Affairs, and, in addition, specific legislation has been enacted pertaining to the management of water on reservations. United States v. Ahtanum Irrigation District, supra; 25 U.S.C.A. § 381 et seq.

■■ Considering the uncontroverted evidence pertaining to the duties of Smithers and Aros, together with the applicable law, there is no question that at the time of the offense alleged in the indictment they were engaged in the performance of official duties arising out of lawfully authorized functions of the Commissioner of Indian Affairs. These defendants knew that Smithers and Aros were Indian Field Service employees, and they were told at the time that Smithers and Aros were performing official duties. When the defendants accosted them for the admitted purpose of preventing those activities they violated Section 111 of Title 18. The defendants take the position that they, as individuals, have the right to scrutinize the activities of government agents lawfully upon the reservation and to interfere if they, in good faith, believe that the government agents are not performing official duties or are engaged in work which is not authorized by law. They justify their good faith belief in this instance by referring to the injunction proceeding, and contending

one below. And the comparison of the analysis of the two samples will tell us whether these salts are coming out of this creek or whether they are coming out of this creek, and to what extent the salts are, and the concentration and so forth."

that they understood that the effect of the injunction was to limit the scope of the activities of the Indian Field Service employees on the reservation. They contend that in refusing to instruct the jury that their good faith belief is a defense, the trial court, in effect, directed the jury to return a verdict of "guilty." A defendant's good faith belief in the propriety of his actions is not a defense to the crime defined in 18 U.S.C.A. § 111. The defendants could not take the law in their own hands. Finn v. United States, 9 Cir., 219 F.2d 894, cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242. This, in substance, is what the trial court instructed the jury, and his instructions did not have the effect attributed to them by the defendants.

Affirmed.